UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOSEPH ROTELLO and NINA ROTELLO, )
 )
   Plaintiffs, )
 )
v. ) No.: 3:03-CV-573
 )  (VARLAN/SHIRLEY)
CLAYTON HOMES OF DELAWARE, INC., )
VANDERBILT MORTGAGE & FINANCE, )
INC., BERKSHIRE HATHAWAY, INC., )
CMH SERVICES, INC., CMH )
MANUFACTURING, INC., CMH )
INSURANCE AGENCY, INC., and )
GEORGE SNYDER, )
 )
   Defendants. )

## MEMORANDUM OPINION

This civil action is before the Court for consideration of two motions. Defendants Clayton Homes of Delaware, Inc., Vanderbilt Mortgage & Finance, Inc., Berkshire Hathaway, Inc., CMH Services, Inc., CMH Manufacturing, Inc., and CMH Insurance Agency, Inc., have jointly filed a Motion to Dismiss [Doc. 22]. In response to that motion, plaintiffs have filed a Counter Motion for Summary Judgment [Doc. 25]. On January 18, 2005, the Court heard oral argument on the motions, as well as a separate motion to dismiss filed by defendant Snyder.[1] On October 7, 2005, after further consideration, the Court requested supplemental briefs, which were timely submitted by the parties.

---

[1] Defendant Snyder filed a Motion to Dismiss [Doc. 23] that the Court has addressed in another memorandum opinion and accompanying order.

Each motion will be addressed in turn. For the reasons discussed herein, the motion to dismiss [Doc. 22] will be granted as to Defendant Vanderbilt Mortgage & Finance and denied as to Clayton Homes, Inc., Berkshire Hathaway, Inc., CMH Services, Inc., CMH Manufacturing, Inc., and CMH Insurance, Inc. As a result, defendant Vanderbilt Mortgage & Finance will be dismissed from this case. Plaintiffs' motion for partial summary judgment [Doc. 25] will be denied as moot with respect to plaintiffs' claim that the Magnuson-Moss Warranty Act prohibits enforcement of an arbitration agreement, and denied with respect to plaintiffs' claim of fraud.

## I.     Relevant Facts

This case arises from plaintiffs' purchase of a manufactured home. According to plaintiffs, they entered into a purchase agreement with defendant Clayton Homes, Inc., which is owned by defendant Berkshire Hathaway, Inc., for a new 2001 model, but actually received a defective 2000 model manufactured by defendant CMH Manufacturing, Inc. [*See* Doc. 1]. Plaintiffs financed this purchase by entering into a security agreement with defendant Clayton Homes, Inc., which assigned all its rights under the security agreement to defendant Vanderbilt Mortgage & Finance, Inc. [*See* Doc. 26, Exh. A at "Assignment," "Seller's Agreement"]. Once the defective home was delivered to plaintiffs' address, which was apparently located on real property owned by defendant George Snyder, it was improperly installed by defendant CMH Services, Inc. [*See* Doc. 1].

Over time, plaintiffs claim they complained about defects, but those defects were never repaired. [*See id.*]. At some point, plaintiffs discontinued payments required under the

2

security agreement. [*See* Doc. 26 at 2]. Defendant Vanderbilt Mortgage & Finance filed an action to recover possession of the home in Sevier County General Sessions Court. [*See* Docs. 12, 19]. In light of plaintiffs' default, the court ordered possession of the home be delivered to defendant Vanderbilt Mortgage & Finance, Inc. [*See id.*]

On November 5, 2003, Plaintiffs filed a complaint [Doc. 1] with this Court alleging jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. [*See id.*]. Plaintiffs allege breach of contract, breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, violation of the Magnuson-Moss Warranty Act, violation of the Tennessee Consumer Protection Act, fraud, suppression, punitive damages, retaliation, outrageous conduct, negligence, civil conspiracy, strict liability, and agency liability. [*See id.*].

Defendants Clayton Homes of Delaware, Inc., Vanderbilt Mortgage & Finance, Inc., Berkshire Hathaway, Inc., CMH Services, Inc., CMH Manufacturing, Inc., and CMH Insurance Agency, Inc., have filed a Motion to Dismiss [Doc. 22]. In response to that motion, plaintiffs have jointly filed a Counter Motion for Summary Judgment [Doc. 25]. The Court heard oral argument on the instant motion, as well as a separate motion to dismiss filed by defendant Snyder, which is not addressed herein. After further consideration, the Court requested supplemental briefs, which were timely submitted by the parties. [*See* Docs. 38, 41, 43]. Defendants advance three grounds for dismissal. [*See* Docs. 22, 26]. Plaintiffs oppose dismissal and seek summary judgment on two issues. [*See* Doc. 25].

## II.    Analysis

A.    Motion to Dismiss [Doc. 22] filed by defendants Clayton Homes of Delaware, Inc. ("Clayton Homes"), Vanderbilt Mortgage & Finance, Inc. ("Vanderbilt"), Berkshire Hathaway, Inc. ("Berkshire"), CMH Services, Inc., CMH Manufacturing, Inc., CMH Insurance Agency, Inc. (collectively "Incorporated Defendants").

Incorporated defendants argue for dismissal on three grounds. [*See* Docs. 22, 26]. First, they argue that the Court lacks subject matter jurisdiction because *res judicata* precludes plaintiffs' claims; therefore, the action must be dismissed pursuant to Fed. R. Civ. P 12(b)(1).  Second, incorporated defendants argue that plaintiffs have failed to state a claim for which relief can be granted because plaintiffs' claims in the present case were compulsory counterclaims in the state case; therefore, the action must be dismissed pursuant to Fed. R. Civ. P 12(b)(6).  Finally, incorporated defendants argue that plaintiffs have failed to state a claim for which relief can be granted because they entered into an arbitration agreement requiring that mechanism for the resolution of disputes; therefore, the action must be dismissed under Rule 12(b)(6).

In response, plaintiffs make several arguments against dismissal. [*See* Doc. 25].  First, they contend that the motion to dismiss should be treated as a motion for summary judgment because defendants attached matters outside the pleadings.  *See* Fed. R. Civ. P. 12(b)(6), 56. Second, plaintiffs contend that the Court has subject matter jurisdiction because *res judicata* does not apply to their claims.   Third, plaintiffs contend that their claims in this case were not compulsory counterclaims in the state court action because that action was brought in a court of limited jurisdiction.  Finally, plaintiffs argue that the arbitration agreement does not

preclude this action because it is unenforceable or, even if enforceable under the Federal Arbitration Act, it does not apply because it is contrary to the Magnuson-Moss Warranty Act.

    i.    12(b)(1) – Lack of Subject Matter Jurisdiction

In seeking dismissal, incorporated defendants first argue that the action must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). As grounds for this argument, they argue that the Court lacks subject matter jurisdiction because the doctrine of *res judicata* precludes plaintiffs from re-litigating claims already tried and decided in state court. Incorporated defendants contend that plaintiffs' claims in this case are "inherently related" to prior state litigation.

Three related doctrines are implicated by incorporated defendants' jurisdiction argument. First, Rule 12(b)(1) requires that a plaintiff recite, and that the Court actually possess, jurisdiction over the subject matter of the action. *See* Fed. R. Civ. P. 12(b)(1). Second, the *Rooker-Feldman* doctrine provides that lower federal courts lack jurisdiction to review the final judgments of state courts. *See Hutcherson v. Lauderdale County*, 326 F.3d 747, 755 (6th Cir. 2003) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). Third, *res judicata* provides that federal courts must give state court judgments the same effect as the rendering state court. *See* 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

While Rule 12(b)(1) sets out the general requirement for subject matter jurisdiction, the other two doctrines implicated by incorporated defendants' arguments provide more specific avenues of attack on a court's subject matter jurisdiction. Rule 12(b)(1) allows for

"facial" as well as "factual" attacks on subject matter jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (citations omitted). One such factual attack is made by applying the *Rooker-Feldman* doctrine. An affirmative defense that is similar to *Rooker-Feldman*, although not typically considered an attack on subject matter jurisdiction, is *res judicata*.

*Rooker-Feldman* and *res judicata* are not "co-extensive," however, and *Rooker-Feldman*, which strips federal courts of jurisdiction, should be considered first. *Hutcherson*, 326 F.3d at 755 (citing *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.1996) (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993))). Only if it does not apply should a court consider a *res judicata* affirmative defense. *Id*. Thus, the Court will consider incorporated defendants' Rule 12(b)(1) argument, followed by the *Rooker-Feldman* and the *res judicata* arguments.

a.     Rule 12(b)(1)

In analyzing a motion under Fed. R. Civ. P. 12(b)(1), the Court must make the distinction between Rule 12(b)(1) motions which attack the complaint on its face and those which attack the existence of subject matter jurisdiction in fact. *Westinghouse Elec. Corp.*, 78 F.3d at 1134 (citing *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). With respect to a "facial attack," the basis of the challenge is not that the Court does not actually have jurisdiction over the case, but rather that a plaintiff has failed to faithfully recite all the jurisdictional predicates necessary for the Court to exercise subject matter jurisdiction over the matter. *Id*. at 1134; *see also Rudd v. Baker Furniture*, 967 F.Supp. 984, 988 (M.D. Tenn. 1997); *Dalton v. Jefferson Smurfit Corp*., 979 F.Supp.

1187, 1193 (S.D. Ohio 1997). By contrast, a party who makes a "factual attack" is challenging the actual existence of the Court's jurisdiction over the matter, a defect that may exist even though the complaint contains the formal allegations necessary to invoke jurisdiction. *Westinghouse Elec. Corp.*, 78 F.3d at 1134.

If the motion to dismiss involves a "facial attack," the Court must consider the allegations contained in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *Id.* In this scenario, the complaint should not be dismissed unless it appears beyond doubt that the plaintiff has failed to set forth any facts in the complaint which would provide the Court with jurisdiction. *Id.*; *see also Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).

When the motion to dismiss is based on a "factual attack," no presumptive truthfulness applies to the complaint's factual allegations and the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* If the facts are in dispute, the Court can exercise wide discretion to consider affidavits, documents outside the complaint, and even conduct a limited evidentiary hearing. *Id.* Consideration of matters outside the pleadings, however, does not convert the Rule 12(b)(1) motion into a Rule 56 motion, as it would under a Rule 12(b)(6) motion.[2] *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915-16 (6th Cir. 1986).

---

[2] "There is, however, a widely recognized exception to this rule. If the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or rule 56." *Wheeler v. Hardman*, 825 F.2d 257, 259 (10th Cir. 1987), *cert. denied*, 484 U.S. 986 (1987) (citations omitted). "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citing *Wheeler*, 825 F.2d at 259). In reviewing the claims, it is evident that such an exception does not apply in the present case.

In the present case, incorporated defendants do not argue that plaintiffs failed to properly recite the predicates necessary for the Court to exercise its subject matter jurisdiction. Therefore, the Court need not conduct a "facial attack" analysis. Instead, they argue that the Court, as a factual matter, lacks subject matter jurisdiction. Therefore, the Court must consider whether the *Rooker-Feldman* doctrine applies. If it does, the Court is stripped of its jurisdiction and the case must be dismissed. *Hutcherson*, 326 F.3d at 755 (citation omitted). If it does not, the Court will proceed to a consideration of defendants' *res judicata* argument.

b. *Rooker-Feldman* Doctrine

The Sixth Circuit has adopted a two-part inquiry for determining whether the *Rooker-Feldman* doctrine applies in a given case. *See id.* at 755. First, the Court must determine whether the federal claim is "inextricably intertwined" with the claim asserted in the prior state court proceeding. *Id.* A claim is "inextricably intertwined" where:

> [T]he federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id.* at 756 (quoting *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir.1998) (quotation omitted)). Second, the Court must consider whether the federal claim is a "general challenge" to the constitutionality of the state law applied in the state court proceeding, to which *Rooker-Feldman* does not apply, rather than a "specific grievance" that the law was invalidly applied in plaintiff's particular case. *Id.* If the *Rooker-Feldman* doctrine applies, a court must

dismiss the case pursuant to Rule 12(b)(1) because it would be deprived of subject matter jurisdiction. *See Hutcherson*, 326 F.3d at 755 (citation omitted).

In the present case, as against incorporated defendants, plaintiffs have alleged breach of contract, breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, violation of the Magnuson-Moss Warranty Act, violation of Tennessee Consumer Protection Act, fraud, suppression, outrageous conduct, negligence, civil conspiracy, and strict liability in connection with their purchase of a manufactured home. [*See* Doc. 1]. In the state court action, defendant Vanderbilt Mortgage & Finance only sought to recover possession of the manufactured home and accessories from plaintiffs after plaintiffs defaulted on payment under the security agreement. [*See* Docs. 12, 19].

Although the federal and state claims are related inasmuch as they involve the same manufactured home, they do not satisfy the *Rooker-Feldmen* "inextricably intertwined" requirement. Simply put, the success of plaintiffs' claims in the present case does not depend upon the conclusions of the Tennessee courts in the state possession action. In addition, neither the federal or state claims in the present case represent a "general challenge" to the constitutionality of the state law applied in the state possession case. Finally, plaintiffs' claims in this case do not represent a "specific grievance" that the law was wrongly applied in the state possession action. Therefore, the *Rooker-Feldman* doctrine does not operate to strip the Court of subject matter jurisdiction in this case. Thus, the court will turn to a consideration of incorporated defendants' *res judicata* argument.

c.    *Res Judicata*

Unlike the *Rooker-Feldman* doctrine, which deprives a court of subject matter jurisdiction, *res judicata* is an affirmative defense, which precludes plaintiff's claims.[3] Under *res judicata*, "federal courts must give state court judgments the same effect the rendering state court would give them." *Hutcherson*, 326 F.3d at 755 (citing 28 U.S.C. § 1738; *Marrese*, 470 U.S. at 380). In the present case, rendering state courts are in Tennessee. Thus, the Court must determine whether plaintiff's claims are precluded according to the doctrine of *res judicata* applied in Tennessee. *Id.*

In Tennessee, "all claims that were actually litigated or could have been litigated in the first suit between the same parties" are barred under *res judicata*.[4] *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.w2d 825, 826 (Tenn. 1979). *See also Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987) (citing 22 *Tennessee Jurisprudence* 112); *A.L. Kornman Co. v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 391 S.W.2d 633, 636 (Tenn. 1965). To prevail on a *res judicata* defense, the proponent must establish four elements: (1) the underlying judgment was rendered by a court of competent jurisdiction; (2)

_____

[3] Incorporated defendants raise *res judicata* in their motion to dismiss pursuant to Rule 12(b)(1). *Res judicata* is ordinarily raised as an affirmative defense pursuant to Fed. R. Civ. P. 8(c). It also may be considered by the Court when asserted in a motion. *See Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). In this case, the Court will consider *res judicata* pursuant to incorporated defendants' motion to dismiss, although Rule 12(b)(1) is not the basis in the rules for a *res judicata* claim. *See* Fed. R. Civ. P 8(c).

[4] A related doctrine, concerned with the preclusion of issues already litigated, is referred to as collateral estoppel. The term *res judicata* has been used both specifically to refer to claim preclusion as well as more generally to include both claim and issue preclusion. *See* Charles Alan Wright, *The Law of the Federal Courts* § 100A, at 722-23 (5th ed. 1994). Here, the Court is concerned only with claim preclusion.

the same parties were involved in both suits; (3) the same cause of action was in both suits; and (4) the underlying judgment was on the merits. *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995) (citation omitted), *cited in Hutcherson*, 326 F.3d at 758. *See also Pile v. Pile*, 183 S.W. 1004 (Tenn. 1915).

Turning to the present case, incorporated defendants have failed to satisfy all four elements of *res judicata*. The prior action was decided by a court of competent jurisdiction and the judgment was on the merits of the possession claim. [*See* Doc. 19]. The other two elements of *res judicata*, however, are not satisfied. First, the state possession action involved only defendant Vanderbilt Mortgage & Finance and plaintiffs. [*Id.*]. It did not include any of the other incorporated defendants involved in the present case. Second, the causes of action raised by plaintiffs in the present action simply are not the same as the state possession cause of action. [*Compare* Docs. 12, 19, *with* Doc. 1]. Therefore, *res judicata* does not operate to preclude plaintiffs' claims in this case.

    ii.    Fed. R. Civ. P. 12(b)(6) – Compulsory Counterclaim in State Action

In an argument related to the affirmative defense of *res judicata*, incorporated defendants also contend that plaintiffs have failed to state a claim for which relief can be granted pursuant to Rule 12(b)(6), because the claims brought in the present action must have been brought in the prior state court action.[5] Because the claims should have been, but were

---

[5] Incorporated defendants do not distinguish which claims should have been brought as compulsory counterclaims in the state action, but the Court notes that this argument could reach even the federal Magnuson-Moss Warranty Act claim, because that statute specifically allows a consumer to bring a claim "in any court of competent jurisdiction in any State . . . ." 15 U.S.C. § 2310(d)(1)(A).

not, brought in the prior action, incorporated defendants argue, they are now barred on a theory of *res judicata*, waiver or estoppel. *See* 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1417 (2d ed. 1990). Plaintiffs respond by arguing that its present claims were not compulsory counterclaims because in the state possession action, defendant Vanderbilt Mortgage & Finance brought suit in a court of limited jurisdiction. By bringing the state action in a court of limited jurisdiction, plaintiffs argue they were not required to bring the present claims because those claims would exceed the jurisdiction of the state court. Furthermore, plaintiffs argue that incorporated defendants' motion must be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56(c) because it refers to matters outside the pleadings.[6]

Under Rule 56(c), summary judgment is proper if the record, taken as a whole, shows that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing there is no

---

[6] In addition to references to the purchase agreement and security agreement, incorporated defendants also refer to the state cause of action throughout the motion to dismiss. [*See* Doc. 22]. The purchase agreement was entered into the record as an exhibit to plaintiffs' complaint. [See Doc. 1, Exh. A]. The security agreement was entered into the record as an exhibit to incorporated defendants' brief in support of the motion to dismiss. [See Doc. 26, Exh. A]. The state court records were made a part of the record as Documents 12 and 19. The Court is considering all of these documents for purposes of the instant motion even though they were not made exhibits to the instant motion.

      It should be noted that consideration of matters outside the pleadings does not convert a Rule 12(b)(1) motion to a Rule 56 motion for summary judgment, except under certain circumstances not applicable here. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d at 915-16. On the other hand, as is the case here, a Rule 12(b)(6) motion that relies on matters outside the pleadings is converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 56, except under certain circumstances not applicable here. *See* Fed. R. Civ. P. 12(b); *see also Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (discussing exceptions).

genuine issue of material fact lies upon the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *See id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *See id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See id.* at 250.

Although neither party has addressed this issue, it stands to reason that the Court must determine whether the claims are barred as compulsory counterclaims to the Tennessee possession action according to the law of compulsory counterclaims in Tennessee. The relevant rule states as follows:

> A pleading shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that a claim need not be stated as a counterclaim if at the time the action was commenced the claim was the subject of another pending action. This rule shall not be construed as requiring a counterclaim to be filed in any court whose jurisdiction is limited either as to subject matter or as to monetary amount so as to be unable to entertain such counterclaim.

Tenn. R. Civ. P. 13.01.

Defendant Vanderbilt Mortgage & Finance brought its possession action in Sevier County General Sessions Court. [*See* Docs. 12, 19]. The jurisdiction of that court is limited to $15,000 in all civil cases, both at law and in equity, except for cases involving forcible entry and detainer.[7] *See* Tenn. Code Ann. § 16-15-501(d). The claims at issue in the present action involve damages that exceed the $15,000 threshold. Therefore, applying Tenn. R. Civ. P. 13.01, there is no genuine issue of disputed material fact that plaintiffs' claims in the present case are not compulsory counterclaims that plaintiffs must have raised in the state possession action.[8]

---

[7] Although plaintiffs later appealed to Sevier County Circuit Court, a court of general jurisdiction, the limited jurisdiction of the general sessions court controls for the purposes of compulsory counterclaims. *See* Tenn. Code Ann. § 16-10-112.

[8] Application of Fed. R. Civ. P. 13(a) would lead to the same result. In determining whether a claim is compulsory under Rule 13(a), a "logical relation" test must be applied. *Maddox v. Kentucky Fin. Co.*, 736 F.2d 380, 382 (6th Cir. 1984), *cited in Lauro v. Tomkats, Inc.*, 9 F. Supp.2d 863, 877 (M.D. Tenn. 1998). Specifically, the Court must consider : (1) whether there is a "logical relationship between the two claims," (2) whether "the issues of fact and law raised by the claim and counterclaim [are] largely the same," (3) whether "*res judicata* [would] bar a subsequent suit on the counterclaim if the court were not to take jurisdiction," and (4) whether "substantially the same evidence [would] support or refute both the claim and counterclaim." *Id.*

### iii. Fed. R. Civ. P. 12(b)(6) – Arbitration Agreement Controls

Turning to their final argument for dismissal of plaintiffs' claims, incorporated defendants argue that plaintiffs have failed to state a claim for which relief can be granted because an arbitration agreement controls the resolution of the claims at issue in this case. Plaintiffs raise three lines of defense in opposing incorporated defendants' motion on this ground. First, they argue the validity of the arbitration agreement itself, contending that it is not enforceable under Tennessee law and that it only applies to defendant Vanderbilt Mortgage & Finance, except that defendant Vanderbilt Mortgage & Finance waived application of the provision when it filed suit in state court. Second, plaintiffs argue that the arbitration provision does not apply to claims brought pursuant to the Magnuson-Moss Warranty Act. Finally, plaintiffs argue that the arbitration provision violates the Magnuson-Moss Warranty Act because it calls for "binding arbitration" and it is not included in the written warranty.

Plaintiffs and defendant Clayton Homes entered into a purchase agreement for the sale of the manufactured home that is the subject of this dispute. The purchase agreement contains a governing law provision that states in relevant part:

---

Although there might be a "logical relationship" between the state possession claim and plaintiffs' claims in this case, the issues of fact and law raised by the claims in the present case are different, and far more extensive, than in the state possession action. The state possession action was narrow in scope, requiring proof of an agreement, evidence of default, and notice of default. The present case involves claims and facts that are at once distinct from and more complex than the relatively narrow issues involved in the state possession action. Therefore, there is no genuine issue of disputed material fact that plaintiffs' claims in the present case are not compulsory counterclaims that they must have raised in the prior state court action.

> The law of the [s]tate, in which Buyer signs this contract, [sic] is the law which is to be used in interpreting the terms of the contract. . . . If under state law a special dispute resolution procedure or complaint process is available, Buyer agrees to the extent permitted by law that procedure shall be the only method of resolution . . . .

[*See* Doc. 1, Exh. A at "Controlling Law and Place of Suit"]. The purchase agreement also includes an "entire understanding" clause excluding all other agreements.

The arbitration provision is contained within a separate document evidencing a security agreement. It states, "all disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties hereof . . . shall be resolved by mandatory arbitration . . . . This agreement . . . shall be governed by the Federal Arbitration Act." [*See* Doc. 26, Exh. A at "Arbitration"]. The security agreement also contains a governing law provision, entitled "Validity," which provides for the application of the law of the state where the security agreement was executed, which was Tennessee, to issues of formation and performance. [*See* Doc. 26, Exh. A]. In addition, the security agreement includes an "Entire Agreement" clause excluding other agreements, except "any separate written warranty" and a closing agreement. [*Id*.]. Plaintiffs and defendant Clayton Homes are the parties to the security agreement, but defendant Clayton Homes assigned its rights to defendant Vanderbilt Mortgage & Finance. [*Id*.].

As a preliminary matter, the parties dispute whether the purchase agreement and the security agreement were intended to be read together as evidence of one transaction or separately as evidence of distinct transactions. Incorporated defendants contend that the purchase agreement and the security agreement must be read together as a single contract

because they were executed contemporaneously, by the same parties, as part of the same transaction, and for a single purpose. [*See* Doc. 38 at 3-4]. Plaintiffs, however, contend that the purchase agreement and the security agreement must be read separately because each is fully integrated without the other. [*See* Doc. 41 at 8-9].

"Generally, absent evidence to the contrary, instruments executed contemporaneously with commonality of parties, purpose, and transaction will be construed together in the eyes of the law as one contract." *In re Branam*, 247 B.R. 440 (Bankr. E.D. Tenn. 2000) (citations omitted). *See also Joy v. City of St. Louis*, 138 U.S. 1, 38 (1891). A close examination of the agreements reveals evidence of the parties' intentions to separately construe each agreement. Although both agreements were entered into by defendant Clayton Homes and plaintiffs, defendant Clayton Homes immediately assigned all its rights under the security agreement to defendant Vanderbilt Mortgage & Finance. [*See* Doc. 26, Exh. A at "Assignment," "Seller's Agreement"]. Although both agreements were executed as part of a purchase-sale transaction, each agreement contains different terms reflecting different purposes and different obligations. [*Compare* Doc. 1, Exh. A, *with* Doc. 26, Exh. A]. Perhaps most important, however, each agreement contains its own, separate merger clause that fully and specifically integrates each agreement to the exclusion of the other. [See Doc. 1, Exh. A (above signature block); Doc. 26, Exh. A at "Entire Agreement"].

Turning to the arbitration provision contained within the security agreement, where clear contract language reveals the intent of the parties, the Court must interpret the contract as it is written. *See Greyhound Lines v. Sharpe*, 565 F. Supp. 419 (E.D. Tenn. 1983). The

parties to the security agreement in this case intended for issues of formation and performance to be resolved according to Tennessee law. [*See* Doc. 26, Exh. A at "Validity"]. In Tennessee, contract terms are given their plain meaning unless they are ambiguous. *See Petty v. Sloan*, 277 S.W.2d 355 (1955). Because the arbitration provision is clear in stating that it is governed by the Federal Arbitration Act, the Court must give it effect in accordance with its terms. Therefore, assuming the arbitration provision is enforceable under the Federal Arbitration Act, disputes "arising from or relating to" the security agreement, "or the subject [t]hereof," must be resolved by binding arbitration. Despite plaintiffs' arguments to the contrary, the Tennessee Uniform Arbitration Act has no application to the security agreement because it was not properly specified by the parties as the governing statute. *Se*e Tenn. Code Ann. § 29-5-302(a).

Under the Federal Arbitration Act, the Court has four tasks when examining an arbitration agreement. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 366, 392 (6th Cir. 2003) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). First, it must determine whether the parties have agreed to arbitrate. *Id*. Second, it must determine the scope of the agreement. *Id*. Third, where federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be nonarbitrable. *Id*. Finally, if the Court concludes that some, but not all, of plaintiffs' claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Id*.

Turning to the Court's first task, determining whether the parties actually agreed to arbitrate, there is no dispute that parties to the security agreement agreed to arbitrate. The

parties to this action, however, dispute exactly which parties are bound by the security agreement. Plaintiffs argue that they only agreed to arbitrate with defendant Vanderbilt Mortgage & Finance as assignee of defendant Clayton Homes's rights under the security agreement. Incorporated defendants, however, contend that plaintiffs agreed to arbitrate with all incorporated defendants. [*See* Doc. 38 at 9].

The only parties to the security agreement containing the arbitration agreement are plaintiffs and defendant Clayton Homes. Defendant Clayton Homes, however, assigned its rights under the security agreement to defendant Vanderbilt Mortgage & Finance. Thus, the Court must determine whether this assignment acts as a novation, substituting defendant Vanderbilt Mortage & Finance for defendant Clayton Homes as a party to the agreement.

> If it clearly appears from the terms of the assignment transaction that the assignee intends to undertake the duty to perform for the assignor, and that the latter intends to be himself no longer bound, there is a discharge of the assignor by novation if the third party accepts performance by the assignee with knowledge of the terms of the assignment or otherwise assents to those terms.

9 *Corbin on Contracts* § 866 (interim ed. 2002) (citing *Iowa Bridge Co. v. Comm'r of Internal Revenue*, 39 F.2d 777 (8th Cir. 1930)).

In the present case, the assignment transaction was contained within the terms of the security agreement. [*See* Doc. 26, Exh. A at "Assignment," "Seller's Agreement"]. The assignee, defendant Vanderbilt Mortgage & Finance, was clearly identified by name and address, and in executing the agreement, plaintiffs agreed to accept performance by the assignee with knowledge of the terms of the assignment. [*See id.* at "Assignee"]. The

assignor, defendant Clayton Homes, manifested an intent to no longer be bound when it stated, "All rights granted to Seller under this contract shall apply to any assignee of this contract." [*Id*. at "Assignment"]. Therefore, in light of defendant Clayton Homes's assignment, the only parties to the security agreement, and thus the only parties who agreed to arbitrate, are plaintiffs and defendant Vanderbilt Mortgage & Finance.

The Court's second task is to consider the scope of the agreement to arbitrate. The parties were clear in their statement of the scope of the arbitration provision:

> All disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties, including the enforceability . . . applicability of this arbitration agreement or provision and any acts, omissions, representations and discussions leading up to this agreement, hereto, including . . . agreement to arbitrate, shall be resolved by mandatory binding arbitration by one arbitrator selected by Seller with Buyer's consent.

[*Id*. at "Arbitration"]. Incorporated defendants contend that the arbitration clause covers all of plaintiffs' claims against each incorporated defendant. [*See* Doc. 38 at 9]. Plaintiffs, however, contend that the arbitration clause does not cover any of their claims against any defendant because all of their claims are rooted in the purchase transaction evidenced by the purchase agreement rather than the financing transaction evidenced by the security agreement containing the arbitration clause. [*See* Doc. 41 at 8-9].

To some extent, plaintiffs are the masters of their complaint. *See* Erwin Chemerinsky, *Federal Jurisdiction* § 5.5 (1989). In addition, the Court, at this stage of the proceeding, is bound to view the evidence in the light most favorable to plaintiff as non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v.*

*Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). Nevertheless, plaintiffs have filed a complaint against defendant Vanderbilt Mortgage & Finance, with whom plaintiffs entered into the arbitration agreement. Aside from the transaction evidenced by the security agreement, plaintiffs have presented no other factual basis for their claims against defendant Vanderbilt Mortgage & Finance.

Therefore, to the extent plaintiffs have any claims against defendant Vanderbilt Mortgage & Finance they must "aris[e] from or relat[e] to" the security agreement "or the subject [t]hereof" and must be arbitrated. Plaintiffs, however, state that they have none. [*See* Doc. 41 at 8-9]. To the extent plaintiffs have any claims arising from or relating to the actual purchase of the manufactured home, plaintiffs have failed to present any evidence that defendant Vanderbilt Mortgage & Finance was involved in that transaction. Thus, the Court need not reach its third or fourth task in examining the arbitration agreement, because there is no genuine issue of disputed material fact that plaintiffs have failed to state a claim for which relief can be granted against defendant Vanderbilt Mortgage & Finance. Incorporated defendants' motion to dismiss will be granted as to defendant Vanderbilt Mortgage & Finance, and defendant Vanderbilt Mortgage & Finance will be dismissed from this case.

B.    Motion for Partial Summary Judgment [Doc. 25] filed by plaintiffs Joseph Rotello and Nina Rotello.

Plaintiffs seek summary judgment pursuant to Fed. R. Civ. P. 56 on two issues. First, plaintiffs contend that there is no genuine issue of disputed material fact that application of the Magnuson-Moss Warranty Act prohibits enforcement of plaintiffs arbitration agreement

with defendant Vanderbilt Mortgage & Finance. Similarly, plaintiffs also contend that there is no genuine issue of disputed material fact as to their fraud allegations against all defendants. Therefore, plaintiffs argue they are entitled to judgment on both issues.

The Court has already addressed the application of the arbitration provision to the parties and claims in this case. In light of that discussion, the Court need not determine whether the Magnuson-Moss Warranty Act operates to prohibit enforcement of the arbitration provision, because the arbitration provision only applies to defendant Vanderbilt Mortgage & Finance, which will be dismissed form this case for reasons discussed earlier. Therefore, plaintiffs' motion for summary judgment as to the application of the Magnuson-Moss Warranty Act to prohibit enforcement of the arbitration agreement will be denied as moot.

Turning to plaintiffs' fraud claim, plaintiffs contend that there is no genuine issue of disputed material fact that they were victims of fraud. In Tennessee, "[w]hen a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is positive fraud." *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 232 (citing *Rose v. Foutch*, 4 Tenn. App. 495 (1926)). The representation must have been about an existing material fact, and the plaintiff must have reasonably detrimentally relied upon that representation. *Id.* (citing *Dozier v. Hawthorne Dev. Co.*, 262 S.W.2d 705 (Tenn. 1953); *Whitson v. Gray*, 40 Tenn. 441 (1859)). Finally, the misrepresentation must have been made with knowledge of its falsity and

fraudulent intent. *Id.* (citing *Vela v. Beard*, 442 S.W.2d 644 (Tenn. 1968); *Shwab v. Walters*, 251 S.W. 42 (Tenn. 1922)).

In the present case, plaintiffs, as movants, bear the initial burden of establishing that there is no genuine issue of material fact. Plaintiffs contend that their burden is satisfied by their joint affidavit describing the alleged fraud and a report by Mr. Bill J. White, an Inspector associated with Interstate Inspections Services, Inc., detailing alleged defects in construction and assembly of the manufactured home. [*See* Doc. 25 at 20-21 (citing Doc. 25 at 49-53; Doc. 1, Exh. B)]. In opposition, incorporated defendants argue that there is a genuine issue of material fact. Specifically, incorporated defendants rely on the affidavit of Doug Keller, General Manager of defendant Clayton Homes's outlet where plaintiffs purchased the manufactured home, in which Mr. Keller denies that any misrepresentations were made to plaintiffs. [*See* Doc. 26-3].

Viewing the evidence in the light most favorable to the non-movants, plaintiffs' motion for partial summary judgment on their fraud claim must fail. Mr. Keller's affidavit denies that any misrepresentation occurred. [*See* Doc. 26-3]. Obviously, plaintiffs dispute that contention. [*See* Doc. 25 at 49-53; Doc. 1, Exh. B]. Such a dispute raises a genuine issue of material fact. Therefore, plaintiffs' motion for partial summary judgment on the fraud claim will be denied.

## III.    Conclusion

To summarize, for the foregoing reasons, incorporated defendants' motion to dismiss [Doc. 22] will be granted as to defendant Vanderbilt Mortgage & Finance and denied as to defendants Clayton Homes, Berkshire Hathaway, CMH Services, CMH Manufacturing, and CMH Insurance.  As a result, defendant Mortgage & Finance will be dismissed from this case.  Plaintiffs' motion for partial summary judgment [Doc. 25] will be denied as moot with respect to plaintiffs' claim that the Magnuson-Moss Warranty Act prohibits enforcement of an arbitration agreement, and denied with respect to plaintiffs' claim of fraud.

ORDER ACCORDINGLY

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE